# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL JACKSON, | ) | |
| | ) | Case No. 13-CV-7713 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Judge Joan B. Gottschall |
| | ) | |
| COOK COUNTY SHERIFF THOMAS DART, et al. | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

This case raises an unresolved issue concerning the meaning and scope of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a): whether the Act's exhaustion requirement applies to an individual who, after filing but not appealing a grievance which has been referred to the Office of Professional Review ("OPR") for further investigation, is found not guilty and is released from imprisonment, obtains a lawyer who prepares a suit based on the subject of the grievance, but is then rearrested on an unrelated charge hours before his attorney files his lawsuit. This court concludes that whether or not plaintiff was a "prisoner" within the meaning of that term for exhaustion purposes, the failure of the defendants to show that plaintiff's exhaustion remedies were still available to him after he was acquitted, released and two weeks later rearrested on another charge, dooms the defendants' summary judgment motion.

Plaintiff Michael Jackson ("Jackson") filed suit against Cook County Sheriff Thomas Dart, Cook County Correctional Officers Lt. Young (Badge # 209), Sgt. C. Daily (Badge #926), Officer Starks, Officer Dearman (Badge # 8528), and other unknown Cook County correctional officers (collectively, "defendants"), alleging claims under 42 U.S.C. §1983 based on defendants' alleged use of excessive force, battery, and failure to provide medical attention while

1

he was incarcerated at the Cook County Department of Corrections ("CCDOC"). Defendants have moved for summary judgment on the ground that Jackson failed to exhaust his administrative remedies prior to filing his complaint. For the reasons stated herein, defendants' motion for summary judgment is denied.

## BACKGROUND

The following facts are undisputed.[1] Jackson entered the CCDOC on January 1, 2013, after being charged with Aggravated Unlawful Use of a Weapon in case number 13 CR 223701. [Defs. 56.1 Statement of Facts ("SOF") ¶ 1, ECF No. 47.] Jackson alleges that on August 14, 2013, while incarcerated at CCDOC, he was involved in an altercation with another detainee. [*Id.* ¶ 2.] After the altercation, Jackson alleges that Lt. Young and other correctional officers used excessive force against him, fracturing his jaw. [*Id.*] Jackson further alleges that after the officers fractured his jaw, they failed to provide him with medical attention. [*Id.* ¶ 3.]

The CCDOC had an established grievance procedure available to detainees. [*Id.* ¶ 9.] The Cook County Sheriff's Office ("CCSO") has 15 days to determine whether a grievance is sustained or not sustained and assign a remedy if appropriate. A detainee who wishes to appeal the decision on his grievance must file his or her appeal within 14 calendar days from receipt of the grievance response. [*Id.*, Ex. E, §VIII, Part D.]

Jackson timely submitted a grievance on August 20, 2013. [*Id.* ¶ 4.] The grievance was processed by CCDOC and given the control number of 2013x3250. [*Id.* ¶ 5.] A response was generated to that grievance but the response failed to indicate whether the grievance was found sustained or not sustained. Rather, the response stated that Jackson's "report has been directed to OPR ["Office of Professional Responsibility"] for review and/or investigation." Jackson

---

[1] Local Rule 56.1 requires the district court to deem admitted those facts that are not contested in the parties' submissions related to the motion for summary judgment. *Robinson v. Bandy*, 524 Fed. Appx. 302, 305 (7th Cir.

2

received and signed the response on September 5, 2013, indicating his receipt of the response. [*Id.* ¶ 7.] Jackson did not appeal the response. [*Id.* ¶ 8.] He contends that he was unaware that he was required to appeal a referral to the OPR in order to satisfy the requirement that he exhaust all administrative remedies. [Pl. 56.1 Add'l Facts ¶ 2, ECF No. 55.] Rather, Jackson took no action while the OPR referral was pending. On October 10, 2013, prior to receiving results of the OPR investigation (or any decision on his grievance), Jackson was acquitted of the Aggravated Unlawful Use of Weapon charge and was released from CCDOC custody. [Defs. SOF ¶ 14.]

Two weeks later, on October 28, 2013, at 12:01 a.m., Jackson was arrested by the Chicago Police Department ("CPD") for Attempted Aggravated Vehicular Hijacking. [*Id.* ¶ 15.] Jackson was transported to the District 003 CPD Lockup at 4:14 a.m. that same day. [*Id.* ¶ 16.] Several hours later, at 11:56 a.m., Jackson was transported from District 003 Lockup to the Leighton Criminal Courthouse for a probable cause hearing. [*Id.* ¶ 17.] After the court found probable cause, it set Jackson's bond at $450,000. [*Id.* ¶ 18.] Jackson was then transported to CCDOC and booked into the Cook County Jail at 3:55 p.m. [*Id.* ¶ 19.]

Jackson's counsel filed his complaint in this case, complaining of the events about which Jackson had earlier grieved, on the same day of Jackson's arrest, October 28, 2013, at 2:40 p.m., while Jackson was in the custody of either the police or the Sheriff's courtroom deputies, but before he was booked into the County Jail. [Pl. 56.1 Add'l Facts ¶ 6.]

## LEGAL STANDARD

Summary judgment is appropriate if the evidence shows that there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

2013). The court has disregarded inadmissible materials, making defendants' request that the court strike them moot.

56(c). The party seeking summary judgment has the "initial responsibility" to show that there is no genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), but the court must view all facts and make all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court views all evidence and draws all inferences in favor of the non-moving party, and may enter summary judgment only if the record as a whole establishes that no reasonable jury could find for the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir.2000).

## DISCUSSION

The defendants argue that Jackson failed to exhaust his administrative remedies prior to filing this suit. The Prison Litigation Reform Act ("PLRA") mandates that "no action shall be brought with respect to prison conditions under 42 U.S.C. §1983, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The PLRA was enacted in an attempt to stem the flow of prisoner filings in federal district courts. *Woodford v. Ngo*, 548 U.S. 81, 94, n. 4, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Jones v. Bock*, 549 U.S. 199, 203, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. The exhaustion requirement has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 203–204, 127 S.Ct. 910. The Seventh Circuit has stated that "prisoners encounter a uniquely low opportunity cost relative to the typical litigant." Opportunity costs rise following a prisoner's release, "'diminishing the need for special precautions against weak suits.'" *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004) (citations omitted).

4

The Seventh Circuit takes a "strict compliance approach to exhaustion, meaning that the prisoner must properly use the prison's grievance system." *Santiago v. Anderson*, 496 Fed.Appx. 630, 636 (7th Cir. 2012). *See also*, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The defendants bear the burden of proving nonexhaustion. *Jones*, 549 U.S. at 216, 127 S.Ct. 910; *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011).

Defendants argue that Jackson failed to exhaust his administrative remedies because he did not appeal the grievance response informing him that his "report has been directed to OPR for review and/or investigation." [Defs. SOF, Ex. D, ECF No. 47.] There are two problems with this argument. First, the response received by Jackson did not say that his grievance was being rejected; it informed him that his grievance would be reviewed and investigated by the OPR.[2] It defies common sense to read that response as negative action on his grievance, such that an appeal was appropriate. Rather, the absence of any decision on his grievance coupled with a referral to OPR sounds like officials at the jail are taking Jackson's grievance seriously, not denying it (they never said they were denying it) but looking into it further.

The Supreme Court has recently ruled that in some circumstances, it is unclear whether, while such an investigation is pending, the normal grievance appeal process is even available. *See Ross v. Blake,* 136 S.Ct. 1850, 1860 (2016). A case in this circuit indicates that in at least one such instance, an appeal from an OPR referral "was rejected . . . with the explanation that Internal Affairs was handling the matter." *Worthem v. Boyle*, 404 Fed. Appx. 45 (7th Cir. 2010). But regardless of whether Jackson *could* have appealed while the OPR investigation was pending, it is hard to imagine *why* he would have appealed. He was not told his grievance was being denied. Rather, he was told that his grievance was being referred to an authoritative body

---

[2] The Inmate Information Handbook explaining the grievance procedure to inmates states that the party responding to the grievance has 15 business days "to sustain or not sustain your grievance and assign a remedy." That requirement was not complied with in this case.

5

for review and investigation. Waiting for the results of the OPR investigation was a perfectly sensible thing to do. Indeed, the Seventh Circuit has indicated that an inmate informed that his grievance has been forwarded to Internal Affairs (the predecessor of OPR) has a choice: he can file an administrative appeal of that decision or he can wait for the results of the Internal Affairs investigation and, if dissatisfied, can then file suit. *Id.* at 46; see *also Crayton v. Graffeo*, 10 F.Supp.3d 888, 895 (N.D. Ill. 2014) (*Worthem* can be read to give the inmate a choice: he either has to appeal the response indicating that his grievance was forwarded to OPR or give the process a chance to work by awaiting a response from OPR); *but see Johnson v. Cook County Jail*, 2015 WL 2149468, *1 (N.D. Ill. May 6, 2015). The latter appears to be the course Jackson chose.[3]

Second, nowhere in the Inmate Information Handbook is the involvement of OPR in the grievance procedure even mentioned. Nor is the defense theory, that the inmate has an obligation to appeal a referral to OPR, even suggested. The court has been informed about it through the affidavit of John Mueller, Deputy Director of Inmate Services at the Cook County Department of Corrections. Mr. Mueller states that "[a]n inmate's filing or participation in an Office of Professional Review (OPR) (formerly internal affairs or IAD) investigation does not satisfy the requirement to properly exhaust the Inmate Grievance Procedure." [Defs. SOF, Ex. E ¶ 7, ECF No. 47.] Mr. Mueller cites an internal Sheriff's Department order to support this assertion, but the court has been able to find nothing in the Inmate's Information Handbook to so

---

[3] The court in *Crayton v. Graffeo*, 10 F.Supp.3d 888 (N.D. Ill. 2014), observed:

> [W]hat inmate—or what person, really—would think to file an appeal when they were told their grievance was being handled by another office that, under the procedures, investigates all complaints of excessive force? The "response" could only have the effect of putting a reasonable recipient in repose, waiting to hear whether his grievance had been sustained or not.

*Id.* at 894. In *Crayton*, however, the plaintiff neither filed an appeal from the response nor waited for the OPR process to run its course. Rather, he filed a lawsuit. That was impermissible option and failed the requirement of exhaustion.

advise the inmates.  The defense may think that the referral to OPR takes the complaint out of the grievance process and doesn't amount to exhaustion if an inmate fails to appeal the OPR referral.  But unless this meaning of the OPR referral and its role in the grievance procedure is made known to the inmates, the court sees no reason why Jackson's decision to await the results of the OPR process should be viewed as inappropriate or impermissible.

Granted, it is possible to read the response form as at least suggesting the necessity of an appeal despite the referral to OPR; the form's printed portion states, "[T]o exhaust administrative remedies, appeals must be made within 14 days of the date the inmate received the response." [*Id.* Ex D.]  But the more natural way of reading the form—the way the court would read the form were it in Jackson's position—is that no decision has been made on Jackson's grievance, as it is being referred to another body for investigation and review.  Indeed,  Jackson points out (and as was indicated above) that the grievance "response" was not a response at all, because forwarding the grievance to another department for investigation of the allegations does not resolve the matter as "sustained" or not "sustained."  [Resp. to MSJ, p. 9, ECF No. 54.]

Regardless, Jackson argues that even if he did not exhaust his available administrative remedies, he was not required to do so.  Rather, Jackson argues the PLRA does not apply to him because he was not a prisoner when his complaint in this case was filed.  The PLRA defines a prisoner as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or a diversionary program."  42 U.S.C. §1997e(h).  At the time he filed his lawsuit, Jackson was certainly "accused of" an offense, although whether, during the booking and bond-setting process, he was "confined in any jail, prison, or other correctional facility" is less clear.  The law is clear, however, that §1997e(h)

does not apply to a person who has been released. *See Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998).

The defense argues that the sequence of events at the time Jackson filed his lawsuit makes clear that he was a prisoner for exhaustion purposes, being either in the custody of the Chicago Police or of the Cook County Sheriff's courtroom deputies. [Defs. Reply, p. 4, ECF No. 57.] Defendants' reasoning is not pellucidly clear and they cite no authority in support of their position. Plaintiff *was* in police custody from 12:01 a.m. on the date his lawyers filed this complaint, October 28, 2013. And he was held in the District 003 CPD Lockup in the custody of the Sheriff's courtroom deputies from 4:14 a.m. until his court hearing at 11:56 a.m. As far as the court is aware, there is no case in this district or circuit holding that a prisoner going through the booking and bond-setting process has administrative remedies available that he is required to exhaust, nor has the defense argued that any such administrative remedies were available to Jackson during those stages of the criminal process. Clearly, once plaintiff failed to make bond and was transported to CCDOC, he was a prisoner of a facility as described in §1997e(h), and that facility had grievance procedures. But by that time, his attorneys had filed this lawsuit [Pl. SOAF, Ex. A, ECF No. 55.]

Nor has the defense addressed the key issue of whether plaintiff, once rearrested and returned to the County Jail, could have revived his earlier-filed grievance. No one has suggested that, once plaintiff was released from his first incarceration, the OPR process continued toward a decision. Rather, from what the court knows, once plaintiff was released, his grievance proceedings came to a halt. It is unclear, therefore, that these administrative remedies were still available to him. So showing is the defendants' burden. In the absence of any evidence indicating the availability of procedures for reviving his earlier-filed grievance, defendants' motion for summary judgment must be denied.

## CONCLUSION

Before OPR ever adjudicated plaintiff's grievance, he was released from custody. He retained a lawyer who prepared a complaint. The complaint was filed after plaintiff had been rearrested but before he was booked into the Cook County Jail, where, although grievance procedures were available to him, it is unclear if those grievance procedures encompassed a grievance from an earlier and unrelated period of incarceration. The defense has not suggested that once plaintiff was released, the proceedings before the OPR went forward toward a resolution. Even if plaintiff, during the booking process on October 28, was a "prisoner" for purposes of §1997e, there is no basis for finding that during the booking process, grievance procedures, based on his prior incarceration, were still available to him. Nor is there any evidence that once he was rebooked into the County Jail on a new charge, he could have revived proceedings on his earlier-filed grievance.

Defendants' motion for summary judgment [46] is for these reasons denied. Status is set for October 5, 2016 at 9:30 a.m.

Date: September 26, 2016                         /s/
                                        Joan B. Gottschall
                                        United States District Judge